FILED'11 JAN 25 0923usdc-ORP

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

MARTA MANSFIELD,

      Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

Civil No. 07-1427-HA

OPINION AND ORDER

HAGGERTY, District Judge:

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act. Plaintiff requested judicial review of a final decision by the Commissioner of the Social Security Administration (SSA) denying her application for disability insurance benefits (DIB) and Supplemental Security Income benefits (SSIB). Plaintiff seeks an order reversing the Commissioner's decision and remanding this case for an award of benefits. After reviewing the record of this case and evaluating counsel's arguments, this court concludes that the findings of the Commissioner denying plaintiff's application for DIB and SSIB must be reversed, and that this action must be remanded for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

      Plaintiff filed applications for DIB and SSIB on July 10, 2002. These applications were denied, and plaintiff's request for reconsideration was addressed at a hearing before an

1  - OPINION AND ORDER

Administrative Law Judge (ALJ). The ALJ heard testimony from plaintiff (who was represented by counsel) and from an impartial vocational expert (VE). The ALJ concluded that plaintiff did not qualify for benefits. Tr. 11-24.[1] Plaintiff appealed to the SSA Appeals Council, which remanded the case for a new hearing because the case file was missing. The remand order was vacated when the file was located. The Council subsequently denied review, and plaintiff then sought judicial review before this court. This court ordered the case remanded for further proceedings when the recording of the ALJ hearing was lost. A new hearing was conducted on September 30, 2008. The ALJ again heard testimony from plaintiff (again represented by counsel) and from an impartial VE. The ALJ concluded that plaintiff could perform past relevant work and perform other work, and so did not qualify for benefits. Tr. 393-401.

Plaintiff appealed to the Appeals Council. The Council denied review, and plaintiff again sought judicial review. This Opinion and Order provides that review.

**FACTUAL BACKGROUND**

The parties present no substantive challenges to the facts as presented in the record of the case. Details of plaintiff's background and medical history will be reviewed as necessary in this ruling's analysis below.

**STANDARDS**

The parties are familiar with the applicable standards required for proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ undertook the appropriate sequential evaluation process for determining whether plaintiff was eligible for benefits because of disabilities. 20 C.F.R. §§ 404.1520, 416.920; *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Plaintiff's challenges to that process and the ALJ's analysis are addressed below.

---

1    Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).

This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).

The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted). A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Id.*

## QUESTIONS PRESENTED

At step one, the ALJ found that plaintiff had not engaged in SGA since her alleged onset date of July 10, 1999. Tr. 395.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; and mild arthritis of the hands, status-post carpal tunnel release. Tr. 396.

After finding that a claimant has severe impairments, an ALJ is required to proceed to the third step to determine whether the existing impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 ("Listing of Impairments"). At this third step, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or medically equal a Listed Impairment. Tr. 396.

If the impairments are not presumed to be disabling, the ALJ determines the claimant's Residual Functional Capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Social Security Ruling (SSR) 96-8p. The ALJ found that plaintiff had the RFC to perform light work, further limited to occasional stooping, crouching, crawling and occasional climbing of ladders, ropes, and scaffolds. The ALJ also found that plaintiff could not perform repetitive wrist movements bilaterally or grasp with her right, non-dominant hand. Tr. 396-400.

Upon the establishment of the claimant's RFC, the ALJ determines at the fourth step whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. The ALJ found that plaintiff could perform her past relevant work as a drafter. Tr. 399-400. This conclusion required the ALJ to make a finding that plaintiff is "not disabled" and to deny disability benefits. *See* 20 C.F.R. § 404.1520(e).

The ALJ also made alternative findings at step five, determining that plaintiff could perform jobs that existed in significant numbers in the national economy, including general office clerk, engineering document clerk, and file clerk. Tr. 400-01. Accordingly, the ALJ found that plaintiff did not qualify for DIB or SSIB.

Plaintiff asserts that the ALJ erred in evaluating (1) her RFC and her ability to perform work; (2) her credibility, and (3) her treating physician's opinions. These challenges are addressed in turn.

**ANALYSIS**

1.    **The ALJ's evaluation of plaintiff's RFC**

Plaintiff argues that the description of plaintiff's limitations that the ALJ presented to the VE for purposes of soliciting evidence regarding any work plaintiff could perform was incomplete. Specifically, the ALJ omitted any restriction against repetitive wrist movement

when posing the hypothetical question to the VE, even though the ALJ's findings regarding plaintiff's limitations ultimately included occasional stooping, crouching, crawling, occasional climbing of ladders, ropes, and scaffolds, and no repetitive wrist movements bilaterally or grasping with her right, non-dominant hand. Tr. 396-400.

When a hypothetical question is posed to a VE, the question "must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). If the hypothetical question does not reflect all of the claimant's limitations, "the expert's opinion has no evidentiary value and cannot support the ALJ's decision." *Id.* at 423.

Defendant, while conceding that the ALJ omitted the "exact language" pertaining to plaintiff's limitations regarding repetitive wrist movements, argues that the ALJ "nonetheless clearly communicated this restriction to the vocational expert." Response at 17 (citation omitted). This "clear communication" purportedly occurred because the ALJ referenced "the source for the wrist limitation" and commented that the views from State agency physicians suggested that "we're looking at more gross manipulation rather than forceful gripping, twisting." *Id.*, (citing Tr. 646). Counsel also notes that the VE attended the entire hearing, suggesting or implying that the VE knew about the basis for the ALJ's ultimate findings even if the ALJ omitted some of those findings from the hypothetical question. Response at 18. Finally, counsel notes that the VE "thoughtfully" identified the job of engineering drafter as the only one of a total of seven past jobs that plaintiff performed. *Id.*

Notwithstanding defendant's attempts to diminish the omissions in the ALJ's hypothetical question, those omissions are critical. In posing hypothetical questions, an ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279-80 (9th Cir. 1987). Limitations that are supported by substantial evidence must be included in the question. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity

has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Here, the ALJ's failure to include accurate and detailed limitations in the hypothetical question that were later determined to be supported by plaintiff's medical record and applicable to her, was error.

However, the failure to include all of a claimant's impairments in the hypothetical question may be cured if claimant's attorney cross-examines and then asks the proper hypothetical question of the VE. *Varney v. Secretary of Health & Hum. Servs.*, 859 F.2d 1369, 1401 (9th Cir. 1988) (recognizing that a case should not be remanded merely to allow the ALJ to make specific findings); *Gallant*, 753 F.2d at 1456 (holding that the record was complete where the ALJ had posed an incomplete hypothetical question to VE but the plaintiff's cross-examination posed questions that included all of a claimant's limitations).

In this case, plaintiff's counsel elicited testimony that limitations in the sustained function of plaintiff's hands "precludes basically everything we've discussed" regarding jobs that could be performed. Tr. 654.

Accordingly, this court is compelled to conclude that the VE's testimony relied upon by the ALJ has no evidentiary value. The ALJ's conclusion at step four that plaintiff could perform her past work as a drafter (which requires frequent handling) is unsupported. Moreover, the ALJ's alternative findings at step five regarding other jobs plaintiff could perform if she could not return to past work are unsupported. Each of the three jobs requires frequent handling. Because of the ALJ's omissions regarding wrist restrictions, as well as omissions pertaining to plaintiff's testimony, lay testimony and medical evidence addressed below, this case must be remanded.

### 2.    The ALJ's evaluation of plaintiff's credibility and lay testimony

Plaintiff contends that the ALJ erred in finding plaintiff's testimony less than credible. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Instead, a two step analysis applies at the administrative level when considering a claimant's subjective credibility. At step one, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom," and "if the

the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281-84 (9th Cir. 1996)); *see also* SSR 96-7p (the ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

When determining a claimant's credibility, the ALJ may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation (such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid) and inadequately explained failures to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider conflicting medical evidence, effective medical treatment, inconsistent statements, daily activities inconsistent with the alleged symptoms, and testimony that is vague or less than candid. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039-40 (9th Cir. 2007); *see also Light v. Commissioner*, 119 F.3d 789, 792 (9th Cir. 1997) (the ALJ may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms).

A claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence. 20 C.F. R.§§ 404.1529(c)(2); 416. 929(c)(2). However, if the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

The ALJ concluded that plaintiff's testimony should be discounted because, in part, there was "evidence of secondary gain" provided by some physicians and evaluators, an unwillingness to prepare disability documentation on the part of some physicians, a conservative approach to

treatment by plaintiff, certain behaviors by plaintiff regarding editing her medical records, and a range of activities performed by plaintiff that contradicted her claimed limitations.

Primarily, counsel refers to the ALJ's reliance upon notes written by Dr. Bruce McElroy, who opined after his first encounter with plaintiff that he did not believe plaintiff was fully disabled. Response at 6 (citing Tr. 15, 206, 398). Doctor McElroy repeated this vocational conclusion in October and November 2002, expressing a belief that plaintiff was not fully disabled and could be a candidate for job training. Tr. 15, 205, 398.

Plaintiff correctly asserts that in the absence of any evidence finding that plaintiff was malingering, the Commissioner must provide clear and convincing reasons for discrediting her testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (holding that without affirmative evidence of malingering in the record, the Commissioner must provide clear and convincing reasons for rejecting the claimant's testimony). This court concludes that the ALJ's reasons for discrediting plaintiff fell short of being clear and convincing.

Specifically, the doubts expressed by Dr. McElroy as to plaintiff's eligibility for disability benefits were inadequate reasons for discrediting plaintiff. There is only a tenuous connection between the doctor's doubts about plaintiff's disability eligibility and the required evaluation of plaintiff's credibility. Such doubts pertain not to credibility, but primarily to issues ultimately reserved to the Commissioner, and are not "clear and convincing" reasons to discredit a claimant. Medical source conclusions about whether the claimant is disabled are not entitled to special weight, and are not necessarily determinative on the disability issue. *See, e.g., Andrews*, 53 F.3d at 1041 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). Relying upon those kinds of conclusions for the purpose of discrediting plaintiff is unpersuasive.

Similarly, the reference to plaintiff's "conservative treatment" as a ground for discrediting her is misplaced. Although this can be a legitimate reason for discounting a claimant's subjective symptom testimony, *see, e.g., Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (recognizing that "a conservative course of treatment can undermine allegations of debilitating pain"), the record presented belies the ALJ's finding in this regard.

8   - OPINION AND ORDER

Under SSR 96-7, an ALJ is not permitted to draw any inferences about an individual's symptoms and their functional effects that are based upon a perceived "failure to seek or pursue regular medical treatment" without first considering any explanations that the individual may provide, or other information in the case record that may explain such apparent failures.

The ALJ failed to pursue any concerns about plaintiff's conservative treatment or non-compliance at the hearing. There is evidence that plaintiff's insurance provider repeatedly denied coverage to plaintiff – to such an extent that plaintiff's treating physician referred to the situation as a "bureaucratic bungle." Tr. 494, 501, 521. The ALJ's portrayal of plaintiff's treatment history as conservative by choice is unsupported by the record and is an insufficient reason to discredit her testimony. The treatment options presented to plaintiff – and the choices she was empowered to make regarding treatment – shed little light upon the veracity of plaintiff's symptom testimony.

Finally, the court notes that plaintiff's conduct of bringing a recording device to her second hearing in her purse is cited by the ALJ as a reason for discrediting her. In light of the facts that the proceedings are recorded as a matter of course, and that the disposition of plaintiff's case has been delayed significantly because the official records and hearing-recording have been lost previously, this conduct is not a clear and convincing reason for viewing plaintiff's credibility as diminished.

The other reasons cited by the ALJ for discrediting plaintiff also fall short of the clearing and convincing standard. Instead, these reasons arise from speculation or assumptions regarding plaintiff's behavior. For example, evidence of activities in which plaintiff participates does not necessarily contradict her symptom testimony, and plaintiff's willingness to augment medical reports with commentary in the margins of the reports is not a clear and convincing reason to doubt her truthfulness. None of the ALJ's reasons for rejecting plaintiff's testimony qualifies as a clear and convincing reason. Accordingly, this court must decide whether "it is clear from the record that the ALJ would be required to determine the claimant disabled if [the ALJ] had credited the claimant's testimony." *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that courts have some flexibility in applying the credit-as-true rule); *see also Benecke v.*

*Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004) (applying credit-as-true rule in a case in which the ALJ failed to provide legally sufficient reasons for rejecting the plaintiff's testimony and the treating physicians' opinions).

Here, in light of the errors regarding the questioning of the VE, coupled with improper evaluations of lay testimony and medical evidence (discussed below), the court concludes that plaintiff would have been found to be disabled if her testimony had been properly credited. Plaintiff's rejected testimony is accepted as true. *Benecke*, 379 F.3d at 594 (citations omitted).

The ALJ also erred in failing to adequately consider lay witness testimony concerning plaintiff's ability to work. 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony is competent evidence and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

An ALJ electing to disregard the testimony of a lay witness must do so by providing reasons "that are germane to each witness." *Id.* The reasons that are "germane to each witness" must also be specific. *Stout*, 454 F.3d at 1053-54 (the ALJ, not the district court or the counsel for the Commissioner, must provide specific reasons for rejecting lay testimony); *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so" (citations omitted)). When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

The ALJ failed to provide specific reasons for discounting the testimony of lay witness Lynn Fontenot, plaintiff's sister. She testified twice and submitted written statements regarding her observations that plaintiff cannot complete tasks, handle stress, or sustain activity for more than one to three hours. Tr. 98-109, 145, 446-48, 635-36. Notwithstanding counsel's proffered

theories suggesting that the ALJ implicitly addressed this lay testimony by ordering a physical capacities evaluation and by rejecting similar testimony given by plaintiff, a review of the record establishes that the ALJ provided no specific reasons for discounting the legitimate lay testimony submitted. Because a reasonable ALJ who fully credited this testimony could have reached a different disability conclusion than the one reached in this case, this error cannot be deemed harmless.

### 3.    The ALJ's evaluation of medical evidence

Finally, the court briefly addresses plaintiff's contention that the ALJ improperly evaluated the opinion of treating physician Dr. Martin Smart. Doctor Smart opined in August 2002 that plaintiff should be limited to performing sedentary work. Tr. 591-94.

An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted opinion from a treating or examining physician by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions); *see also Embrey*, 849 F.2d at 422 (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing physician's conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830; *see also Carmickle*, 533 F.3d at 1164 (opinions from doctors with the most significant clinical relationship with the claimant are generally entitled to more weight than opinions from doctors with lesser relationships).

Moreover, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422). Although a treating physician's opinion "is generally

11 - OPINION AND ORDER

afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes*, 881 F.2d at 751). An ALJ need not accept a treating physician's opinion that is conclusory or brief. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Similarly, an ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (the ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole"); *see also Tommasetti*, 533 F.3d at 1041 (not improper to reject an opinion largely based on a claimant's discredited subjective complaints or presenting inconsistencies between the opinion and the medical record or a claimant's daily activities).

Here, there were a number of medical opinions that could be construed as conflicting with Dr. Smart's conclusions. Accordingly, the ALJ was required to provide specific and legitimate reasons that were supported by substantial evidence for rejecting Dr. Smart's opinions.

The ALJ concluded that Dr. Smart's August 2002 physical assessment was inconsistent with more recent observations by the doctor describing plaintiff's symptoms as mild and stable. The ALJ also noted that Dr. Smart declined to manage plaintiff's pain medication regimen, and discounted the doctor's opinions that were perceived as being derived from plaintiff's self-reports. Tr. 399.

The ALJ's emphasis upon Dr. Smart's refusal to provide "the claimant's pain management regimen, as requested," Tr. 399, is misplaced. The record establishes that Dr. Smart deferred plaintiff's pain management regimen because other providers were addressing that aspect of care. Tr. 578.

Similarly, the ALJ's summary conclusion that Dr. Smart's assessment of plaintiff's functional capacity was based upon plaintiff's "subjective reports and not supported by the

12 - OPINION AND ORDER

objective evidence," Tr. 399, ignores evidence that Dr. Smart knew of plaintiff's surgeries, her back injuries, her treatment for chronic diarrhea, and her fibromyalgia. Tr. 578.

Moreover, to the extent that the ALJ rejected Dr. Smart's findings because they were perceived to be derived from plaintiff's "subjective reports," that rejection is flawed because the ALJ improperly discredited plaintiff's testimony. This court concludes that the ALJ improperly rejected Dr. Smart's opinions, and that those views should be credited as a matter of law. *Lester*, 81 F.3d at 834.

### 4.    Remand

Because the errors committed by the ALJ regarding the evaluations of lay testimony, Dr. Smart's opinions, plaintiff's testimony, and the VE's questioning are not harmless, this action must be remanded. A court may remand a Social Security disability case under either sentence four or sentence six of 42 U.S.C. § 405(g). *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007). A sentence-four remand is essentially a determination that the Commissioner erred in denying benefits. *Id.* (citations omitted).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

The issues presented here compel a remand under sentence four. The decision whether to remand under sentence four for further proceedings or for immediate payment of benefits because of the kinds of errors committed here is within the discretion of the court. *Benecke*, 379 F.3d at 590; *see also Holohan*, 246 F.3d at 1210 (holding that a remand for further proceedings "is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits"). The rule recognizes "the importance of expediting disability claims." *Id.* "[I]n cases in which it is evident from the record that benefits should be awarded,

13 - OPINION AND ORDER

remanding for further proceedings would needlessly delay effectuating the primary purpose of the Social Security Act, 'to give financial assistance to disabled persons because they cannot sustain themselves.'" *Id.* (quoting *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995)).

Under these standards, a remand for a finding of disability and an award of benefits is appropriate here. When evaluating the opinions and conclusions of Dr. Smart and with the proper weight given to those opinions and the testimony of plaintiff and her sister, it is clear from the record that plaintiff is incapable of full-time employment. The record presented establishes that plaintiff cannot perform any SGA that exists in the national economy, and the case need not be returned to the ALJ. *Benecke*, 379 F.3d at 595. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Id.* (citations omitted). As the *Benecke* court summed up:

> Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.

*Benecke*, 379 F.3d at 595 (citations and internal quotations omitted).

## CONCLUSION

Given the foregoing, there are no outstanding issues in this matter that require resolution. The court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable standards, and after giving the evidence in the record the effect required by law, this court finds that plaintiff is unable to engage in any substantial gainful activity by reason of her impairment, and she is disabled under the Act. The final decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the proper calculation and award of DIB and SSIB on behalf of plaintiff Marta Mansfield.

IT IS SO ORDERED.

DATED this _24_ day of January, 2011.

ANCER L. HAGGERTY
United States District Judge